Clayton B. Schroeder, appellant, v.
Maria A. Schroeder, now known as
Maria A. Michaelis, appellee.
___ N.W.2d ___

Filed April 28, 2015.    No. A-14-057.

1. **Contempt: Words and Phrases.** When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order.
2. **Modification of Decree: Notice: Contempt: Pleadings.** Absent application and notice requesting modification, a trial court does not have the power to modify a divorce decree during the course of a contempt proceeding.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Reversed and remanded with directions.

Brandie M. Fowler and Matthew Stuart Higgins, of Higgins Law, for appellant.

C.G. "Dooley" Jolly, of Adams & Sullivan, P.C., L.L.O., for appellee.

Irwin, Riedmann, and Bishop, Judges.

Irwin, Judge.

This appeal involves a contempt action initiated by Maria A. Schroeder, now known as Maria A. Michaelis, resulting from her belief that her ex-husband, Clayton B. Schroeder, failed to abide strictly by the terms of a custody order entered by the district court. Below is a summary of the procedural and factual background of the case.

In 2006, the district court entered a decree of dissolution, dissolving the marriage between Maria and Clayton. The decree contained a custody order and parenting plan which was to govern the parties' actions as to their daughter, Alexis Schroeder, born in May 2004. Since the entry of the decree, there have been multiple modifications made to the original custody order and parenting plan. It is clear, simply from the number of times these parties have appeared in court requesting such modifications, that they do not communicate well

with each other and that they have a contentious relationship which hinders their ability to make decisions together regarding their daughter.

The current custody order and parenting plan contains the following provision:

> Both parties have further agreed that the minor child should have access to telephone contact with the non-possessory parent, and each parent should have the same degree of telephone access with the child. The parent with whom the child is staying at any one time shall assist the child in initiating calls to or receiving calls from the other parent, and shall not unreasonably interfere with such access. Telephone access shall be exercised by the non-possessory parent at reasonable times, and for reasonable durations, to take into account the child's school and extracurricular activity schedule, bedtime, and meals.

Clayton's compliance with this telephone schedule provision forms the basis of the current appeal.

In June 2013, Maria filed a motion for an order to show cause. In this motion, she alleged that Clayton had willfully failed to comply with the tenets of the telephone schedule provision and that he should be found by the court to be in contempt. Specifically, Maria alleged in her affidavit accompanying the motion:

> Despite the clear and unambiguous language of the [telephone schedule provision], [Clayton] steadfastly, arbitrarily and baselessly refuses to assist Alexis in the initiation and/or receipt of telephone calls with me. In fact, when [Clayton] is exercising his parenting time with Alexis, I rarely, if ever, am afforded the opportunity to speak with Alexis. As such, I often go multiple days without any communication whatsoever with Alexis.

A hearing was held on Maria's motion for an order to show cause. At this hearing, Maria testified that she regularly attempts to telephone Alexis at least two or three times when Alexis is with Clayton, that she often does not make contact with Alexis, and that if she does make contact, the telephone calls are very short in duration. Maria testified that

she believes her desire to speak with Alexis on the telephone every day that Alexis is with Clayton is "reasonable." To the contrary, Clayton testified that he believes Maria's telephone calls to Alexis are excessive, unreasonable, and place unnecessary stress on Alexis. In addition, he testified that he does not hinder Alexis' ability to speak with Maria, but, rather, leaves it up to Alexis to decide when she does and does not want to speak with Maria on the telephone.

After the hearing, the district court entered an order finding that Clayton is guilty of contempt of court for his failure to abide by the terms of the telephone schedule provision. The court indicated that it read the provision to provide each parent the right to reasonable contact with Alexis when she was in the care of the other parent. The court went on to find, "Reasonable contact . . . could be a daily contact. There's nothing wrong with a parent contacting their child on a daily basis when they don't have the child." In addition, the court's order finding Clayton in contempt also required the parties to have breakfast with each other and Alexis one time per month. The court indicated:

> During this breakfast, the parties are to act respectful [sic] to each other, each party is to tell one age appropriate joke, and have one age appropriate human interest story to discuss. The purpose of this is to demonstrate to the minor child that the two people the minor child loves the most can get along.

Clayton appealed from the district court's order. However, we dismissed this initial appeal as prematurely filed because Clayton had not been sentenced for his contempt conviction.

Upon our remand, the district court held a sentencing hearing where it sentenced Clayton to an "admonish[ment]" for his failure to comply with the telephone schedule provision. The court indicated that "[i]f there are no further violations of the Decree by [Clayton] within the next six months, the Contempt findings of this court shall be vacated." At this hearing, the court also indicated that it was going to continue to require the parties to participate in a monthly breakfast with each other and Alexis for "a period of three to four months."

Clayton has now filed a second appeal. In this appeal, he alleges that the district court erred in finding him in contempt of court for failing to abide by the terms of the telephone schedule provision and in ordering him to participate in monthly breakfasts with Maria and Alexis.

Clayton first alleges that the district court erred in finding him to be in contempt of court for his failure to abide by the tenets of the telephone schedule provision. Specifically, Clayton alleges that there was insufficient evidence to establish that he willfully disobeyed the tenets of the telephone schedule provision because such tenets were not "clear and unambiguous enough to put [him] on notice that his conduct would be in violation of [the court's order]." Brief for appellant at 17. Clayton's argument clearly has merit.

[1] When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. In her motion for a show cause order, Maria alleged that Clayton willfully violated the telephone schedule provision. However, this provision is not specific enough to provide either party with knowledge about exactly what was required of them. As a result, any violation of the provision on Clayton's part could not be intentional or willful.

A careful review of the language of the provision indicates that each parent was merely required to "assist the child in initiating calls to or receiving calls from the [nonpossessory] parent" and that each parent "shall not unreasonably interfere with such access." The provision does not contain a definition of what constitutes reasonable access, nor does it provide any indication of how often a nonpossessory parent should be permitted to speak with Alexis. Although the district court specifically found that daily contact with Alexis by the nonpossessory parent "could" be reasonable, this is not a specific requirement of the telephone schedule provision as it existed prior to the contempt hearing.

The evidence presented at the hearing revealed that Maria was able to speak with Alexis during her time with Clayton, just not as often as Maria would have liked. The evidence also revealed that the parties have very different ideas about what constitutes reasonable telephone access under the tenets of this provision. Given this evidence, and given the ambiguous language contained in the telephone schedule provision, we reverse the district court's order finding Clayton to be in contempt.

Clayton also alleges that the district court erred in requiring him and Maria to participate together in a monthly breakfast with Alexis. Specifically, he alleges that neither party requested any sort of modification to the custody order and parenting plan and that, as a result, he did not have notice the court was going to order such a modification and was unable to refute the propriety of the modification. Again, Clayton's assertion has merit.

[2] In her initial motion to the court, Maria requested the court to determine only whether Clayton was in contempt of court for violating the telephone schedule provision. She stated:

> [Maria] moves the Court for an Order finding [Clayton] in contempt for willful disobedience and resistance of lawful orders of this Court, issued and directed to the parties on February 11, 2009, and on November 6, 2009, for [Maria's] attorneys fees and costs incurred in bringing this application, and all other relief as this Court deems fair, just, and equitable.

There was no request for any sort of modification to the previously entered custody order and parenting plan. The Supreme Court has previously held that absent application and notice requesting modification, a trial court does not have the power to modify a divorce decree during the course of a contempt proceeding. See *Mays v. Mays*, 229 Neb. 674, 428 N.W.2d 618 (1988). This rule would seem to be equally applicable to the modification of a custody order contained within a divorce decree.

Neither party requested a modification to the previously entered custody order and parenting plan. We therefore reverse

the district court's decision to require the parties to participate in monthly breakfasts with each other.

In conclusion, we reverse the district court's contempt order for a failure of proof. See *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012) (explaining that finding of civil contempt requires willful disobedience). As to the "breakfast order," we reverse the district court's decision to require the parties to participate in monthly breakfasts with each other because neither party requested such a modification to the custody order and neither party had notice that such a modification was being considered by the court. For the reasons set forth herein, we reverse, and remand with directions.

REVERSED AND REMANDED WITH DIRECTIONS.

BISHOP, Judge, concurring in part, and in part dissenting.

I dissent from the majority's opinion reversing the contempt order, and in part dissent to its reversal of the modifications ordered by the district court. Although for different reasons, I concur with the majority that the breakfast meeting modification should be reversed.

## CONTEMPT

Clayton's first assigned error is that the trial court erred in finding him to be in civil contempt. The majority agreed and reversed the district court's contempt order "for a failure of proof." I dissent from that conclusion because the district court made specific factual findings that the telephone schedule provision was "reasonable to understand," that Clayton had an obligation to facilitate the communication between Alexis and Maria, and that "[f]acilitating the communication is not letting a nine-year-old kid make a determination as to whether she's talking to her mom." There was no clear error in this finding. Notably, Clayton testified:

> When there is a phone call placed and [Alexis] is not engaged in an activity, she's offered the telephone. She knows how to answer the telephone. She knows there's . . . a big green button if she wants to answer, and she will look at it and put it down or give it back to me if she chooses not to speak.

This response was explored further on cross-examination:

[Counsel for Maria:] Didn't you testify earlier that you would hand the phone to [Alexis] and say if you want to answer it you can but if you don't you don't have to?

[Clayton:] Yes. There's a large red or green button that she would have to push.

[Counsel for Maria:] Okay.

[Clayton:] She's nine. She knows how to read and follow pretty simple directions.

[Counsel for Maria:] So basically your testimony . . . is that when Maria calls you give [Alexis] the phone and you give [Alexis] the choice of answering; is that correct?

[Clayton:] Yes.

[Counsel for Maria:] Okay. Do you think that's reasonable.

[Clayton:] Yes.

. . . .

[Counsel for Maria:] So is it your testimony that it's adverse to [Alexis'] health to speak with her mother on the phone?

[Clayton:] If that phone call is causing stress, then I'm not going to force the phone call. She's given the option to answer or not. There's no stress put on it on my side.

[Counsel for Maria:] You're an educated man, [Clayton]. You don't read within paragraph 5 any duty on your part to help facilitate these phone calls?

[Clayton:] I guess if you're asking me if I push a button. Is that your question? Do you want me to push a button in order to have her talk to her?

[Counsel for Maria:] Yes. Yes.

[Clayton:] Okay.

. . . .

[Counsel for Maria:] So are you saying — are you — do you read in there where you do not have a responsibility to assist in these phone calls being made?

[Clayton:] I believe I am assisting in how those phone calls are being made.

[Counsel for Maria:] By handing a nine-year-old child a phone and allowing her to make a decision on whether to answer?

[Clayton:] Yes.

[Counsel for Maria:] And you don't think it's possible that [Alexis'] stress level is caused by the ramifications she knows is going to occur if she talks to Maria?

[Clayton:] There's no ramification in my house. It's when she goes back to the other house and gets yelled at for not answering the phone.

[Counsel for Maria:] But you admit that when Maria calls you don't always take them?

[Clayton:] I would agree to that.

The district court asked further questions on this matter and confirmed that when Maria calls Clayton's cell phone, Clayton knows it is her because "[t]he caller ID pops up." The court further inquired as follows:

[The court:] And then you give your phone to your daughter, [Alexis], and say, you know, it's your mother, do you want to talk to her or not, and if she wants to talk to her then she pushes some button on the phone. If she doesn't, then she just walks away, right?

[Clayton:] Correct.

[The court:] Okay. And you don't answer the phone and give it to her?

[Clayton:] No.

Clayton testified that he was "assisting" by handing the phone to Alexis and allowing her to decide whether to answer the call. Clayton testified that "reasonableness" means a telephone call here and there with Alexis when she is in his care and that "[e]xcessive contact is what causes the stress on the child." Clayton testified that the telephone plan had been in place "over the last few years" and "we've discussed with these counselors about the stress that it puts on the child and what we observe and I've chosen not to inflict that upon her," and that his decision was based on "feedback from the counselors that we've spoken to." At the conclusion of the evidence, the court made its findings on the record and stated in relevant part:

The way I read that [November 9, 2009, order] is, is that each parent has a right to reasonable contact with the minor child, that being [Alexis], when the other party has possession of that child. Reasonable contact this Court finds could be a daily contact. There's nothing wrong with a parent contacting their child on a daily basis when they don't have the child.

I mean, and it has to be for a reasonable time. It can't be for, you know, 15, 20 minutes, and then it just keeps going on and on, but just for a reasonable time just — and I think that comforts the child when the child knows that the other parent does not object to that phone call.

And I think, [Clayton], one of the reasons your daughter may not be accepting the calls is because she knows that you don't get along with [Maria], her mom. She knows her dad doesn't get along with her mom, and she knows that — and when she's with you she wants to please you, and that may be one way that she is pleasing you or doesn't want to upset you is by talking to her mom. That's a guess on my part.

Under the order, [Clayton], you have an obligation to facilitate the communication. Facilitating the communication is not letting a nine-year-old kid make a determination as to whether she's talking to her mom.

Facilitating means you say, hello, um, good evening, just a minute I'll get your daughter for you, and you give the phone to your daughter. You don't let the daughter make decisions. . . .

. . . [T]he Court finds by clear and convincing evidence that, [Clayton], you are in contempt of court. I think it's reasonable to understand what the order says and you have failed to comply with that order.

There was no clear error in the district court's finding that Clayton failed to comply with that part of the telephone provision which requires each parent to assist Alexis in initiating calls to or receiving calls from the other parent. There is sufficient evidence in the record to support the district court's

conclusion that Clayton understood the order and failed to comply with it.

The majority concludes that "the parties have very different ideas about what constitutes reasonable telephone access under the tenets of this provision" and that "[t]he provision does not contain a definition of what constitutes reasonable access, nor does it provide any indication of how often a nonpossessory parent should be permitted to speak with Alexis." I do not disagree on this point. However, I do not see this frequency aspect of the telephone provision as the basis for the district court's finding that Clayton violated the telephone provision. Rather, the district court was troubled by Clayton's handing the telephone over to Alexis and letting her make the choice of whether to push the "green button" and answer the call. As the district court noted, letting a 9-year-old child make that decision was not compliant with the requirement that the parent facilitate the telephone contact.

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

I conclude that the district court's factual findings were not clearly erroneous and that based upon those findings, it did not abuse its discretion in determining that Clayton was in contempt of the telephone provision, specifically, that he failed to assist Alexis in initiating calls to or in receiving calls from Maria. I would affirm the district court's contempt order.

## MODIFICATION OF DECREE

Clayton's second assigned error is that the district court erred by unilaterally modifying the parenting plan of the parties without providing either party notice or an opportunity to

be heard. In the district court's order filed September 3, 2013, wherein the court found Clayton in contempt for failing to comply with the telephone provision, the court also went on to state in its order:

This Court on its own Motion, which is in the best interest of the minor child, hereby modifies the Decree and Parenting Plan as follows:

1. That neither party shall make any derogatory remarks of the other party to that party, or in the presence of the minor child.

2. That the parties are to have breakfast once per month on the first Saturday morning of the month that [Maria] has possession of the minor child. [Clayton] will choose the breakfast site in odd numbered months and [Maria] will choose the breakfast site in even numbered months. If the parties cannot agree on a time, then the breakfast will commence at 9:30 a.m. This breakfast shall include the two parties and the minor child. During this breakfast, the parties are to act respectful [sic] to each other, each party is to tell one age appropriate joke, and have one age appropriate human interest story to discuss. The purpose of this is to demonstrate to the minor child that the two people the minor child loves the most can get along.

3. The Court also finds that reasonable phone conversation can include daily phone conversation at reasonable times and duration.

The majority concludes that there was no request for modification and that absent application and notice requesting modification, a trial court does not have the power to modify a divorce decree during the course of a contempt proceeding, citing to *Mays v. Mays*, 229 Neb. 674, 428 N.W.2d 618 (1988). The majority then goes on to state, "This rule would seem to be equally applicable to the modification of a custody order contained within a divorce decree."

In *Mays, supra*, one party was awarded a coin collection and in a contempt order, the other party was ordered to deliver the coin collection or pay the face value of the coins. The party entitled to the coin collection argued that by permitting

the payment in lieu of delivery of the coins, the court "unauthorizedly modified its original decree of dissolution and, in the alternative, that the value of the coins should be the actual value, rather than the face value." *Id*. at 675, 428 N.W.2d at 619. Our Supreme Court stated that "absent an application and notice requesting modification, a trial court has no power to modify, during the course of contempt proceedings, the terms of an earlier order for support or division of property," and reversed that portion of the district court's order. *Id*. I agree that this legal proposition prohibits modification of "support or division of property" during a contempt proceeding. However, it does not speak to a court's ability, in enforcement proceedings, to modify parenting time, visitation, or other access with a minor child as set forth in Neb. Rev. Stat. § 42-364.15 (Reissue 2008):

> In any proceeding when a court has ordered a parent to pay, temporarily or permanently, any amount for the support of a minor child and in the same proceeding has ordered parenting time, visitation, or other access with any minor child on behalf of such parent, the court shall enforce its orders as follows:
>
> (1) Upon the filing of a motion which is accompanied by an affidavit stating that either parent has unreasonably withheld or interfered with the exercise of the court order after notice to the parent and hearing, *the court shall enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to parenting time, visitation, or other access*. The court may use contempt powers to enforce its court orders relating to parenting time, visitation, or other access. The court may require either parent to file a bond or otherwise give security to insure his or her compliance with court order provisions; and
>
> (2) Costs, including reasonable attorney's fees, may be taxed against a party found to be in contempt pursuant to this section.

(Emphasis supplied.)

In this case, Maria filed a motion requesting an order finding that Clayton was in contempt for willful disobedience

and resistance to the orders of the court, and included an affidavit stating, among other things, that on November 6, 2009, a modification order provided the telephone provision (as previously set forth), and that despite its clear and unambiguous language, Clayton "steadfastly, arbitrarily and baselessly refuses to assist Alexis in the initiation and/or receipt of telephone calls" with Maria. A hearing was held on August 29, 2013. Based upon the language of § 42-364.15(1), there was an allegation of interference with the exercise of a court order relating to access to the child and there was a hearing on the same. Section 42-364.15(1) provides that after such notice and hearing, the court shall enter orders as are reasonably necessary to enforce the rights of either parent "including the modification of previous court orders relating to parenting time, visitation, or other access." Additionally, the court may use its contempt powers to enforce its orders relating to these matters. Notably, the authority granted to the court pursuant to this statute does not extend to modifications relating to custody, child or spousal support, or property division matters. It does, however, give the court authority to enforce the rights of the parents pursuant to existing court orders and to modify parenting time, visitation, or other access to the child as are "reasonably necessary" to enforce such rights. As to the district court's three modification provisions noted earlier, I conclude that the facts support two of the three modification provisions as being reasonably necessary to enforce the telephone access that was placed at issue by Maria's motion and affidavit. However, the facts do not support the breakfast meeting modification as being reasonably necessary; I address that first.

## Breakfast Meeting Modification

I agree with the majority that the breakfast meeting provision should be reversed; however, I do not agree with the majority's basis for doing so, namely, that "absent application and notice requesting modification, a trial court does not have the power to modify a divorce decree during the course of a contempt proceeding." Such a holding cannot be reconciled with the plain language of § 42-364.15(1), which does

provide the court with authority to modify its previous orders under certain circumstances, as discussed above. Instead, I would reverse this portion of the court's order based on the breakfast provision not being reasonably necessary to enforce the rights at issue, as set forth in § 42-364.15(1), specifically in this case, to enforce Maria's rights of access to Alexis via the telephone contact previously ordered by the court. I applaud the district court's efforts to try to get these two contentious parents to demonstrate, in the presence of Alexis, a polite and more familial relationship. The inability of these parents to get past their own attitudes toward the other parent or their own personal needs, and to instead focus on creating an emotionally safe and thriving environment for Alexis, certainly presented a challenge to the district court. At the hearing, the court told the parties it was ordering the breakfast meetings because Alexis needed to see her parents "get along." The court further stated:

> [H]ere's this person that you love the most in the world along with your other children and the way that you show your love to her is to get along with the other person that she loves the most. And what you do, rather than show love, is you show hate to the other person, which directly injures your daughter emotionally. If you love your daughter, you'd figure out a way to get along.

There is no question the court was seeking a solution as to how to get these parents to consider their daughter's best interests before their own interests or frustrations, and perhaps under its contempt powers, the district court could have ordered the breakfast meetings on a temporary basis. See *In re Interest of Samantha L. & Jasmine L.*, 284 Neb. 856, 824 N.W.2d 691 (2012) (Nebraska courts, through their inherent judicial power, have authority to do all things necessary for proper administration of justice, including power to punish for contempt), and *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010) (contempt sanctions which aim to compel future obedience are coercive and are conditioned upon continued noncompliance and are subject to modification by contemnor's

conduct). Whether such a coercive sanction would be supported by the facts in this record and survive an abuse of discretion standard of review by an appellate court, however, is not decided here because in this case, rather than impose the breakfast meeting as a temporary coercive sanction, the court instead elected to modify the decree. To do that, the modification must be reasonably necessary to enforce the rights of either parent to their parenting time or other access, and while the court's good intentions are noted, the record does not support that it was reasonably necessary for the parties to have monthly breakfast meetings with their daughter in order to enforce the telephone access at issue. Accordingly, I would reverse the breakfast meeting modification.

## Other Modifications

The majority's opinion is silent as to the other two modification provisions which ordered that (1) neither party shall make any derogatory remarks of the other party to that party, or in the presence of the minor child, and (2) reasonable telephone conversation can include daily telephone conversation at "reasonable times and duration." Presumably, these provisions are likewise reversed based on the majority's conclusion that modification of a decree was not authorized in the present action. I would affirm these two modification provisions as being reasonably necessary to enforce each parent's parenting time and/or telephone access, since the issue of frequency of telephone contact and derogatory remarks allegedly made by both parties in the course of dealing with telephone contact were at issue in this action.

The record reflects that Clayton's position was that Maria's efforts to contact Alexis were excessive, whereas Maria testified that she tried to reach Alexis on 2 out of the 7 days (per 14-day period) that Alexis was with her father, but that she called more often or on other days because her calls were not returned. Maria also testified that she was not permitted to call Clayton's home telephone, just his cell phone. Maria also testified that she had tried many times to resolve their communication issues and that Clayton was rude multiple times, such as ignoring her or her e-mails, and that when he is angry, "he

sends texts that say don't call me again, don't text me again, don't do this again, just kind of talking down to me." Maria testified that the longest period of time that she had gone without speaking to Alexis was 9 to 10 days and that during that time, she did not know where Alexis was, even though she had asked Clayton for his travel plans for that 10-day vacation period. Maria testified that Alexis does not feel like she is allowed to use the home telephone and that she does not feel comfortable asking Clayton for it. Clayton testified that Maria contacted his family and his wife "and said extremely derogatory things that have really kind of demolished our communication" and that this generally was the basis for denying her contact through the home telephone.

Since the parental interference or noncompliance at issue stemmed from telephone contact, including disagreements on what constituted reasonable telephone contact and allegations of derogatory remarks being made by each party with regard to telephone contact matters, I conclude that the district court did not abuse its discretion in modifying the decree to include these provisions, since they are reasonably necessary to enforce each parent's rights as to the matters related to telephone access.

## CONCLUSION

In summary, when a civil contempt determination is made by a district court, an appellate court should reverse only if the trial court's factual findings are clearly erroneous, and if they are not, then the trial court's determinations of whether a party is in contempt and of the sanction to be imposed should be reversed only if there has been an abuse of discretion. See *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). There is no question that trial courts need that discretion to be able to deal firmly, and at times creatively, when trying to protect the best interests of a minor child in the face of evidence that the child's parents have created an uncomfortable and stressful environment for the child because the parents cannot figure out a way to get along and coparent in a reasonable manner for the sake of the child. The district court did not abuse its discretion in finding that Clayton willfully

failed to comply with assisting Alexis in initiating calls to or receiving calls from Maria.

Further, § 42-364.15(1) authorizes a trial court to enter orders as are reasonably necessary to enforce rights of either parent, and this includes the modification of previous court orders relating to parenting time, visitation, or other access. As discussed above, I would reverse the breakfast meeting modification, but I would affirm the other two modification provisions as being reasonably necessary to enforce matters pertaining to telephone contact.